## HENNESSY v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

Division One, March 18, 1903.

**Negligence: ACCIDENT: MISUNDERSTANDING OF INFORMATION.** Plaintiff was injured. by a collision between two cars of defendant, running on the same track in different directions, on one of which was the president of the company, and while his car was on a switch another car passed and the motorman on the president's car asked the motorman on the passing car if his was the last car out, and he said yes, but the motorman says he stated "that there was one more car out there, but he did not know whether the president's car would meet it or not." The plaintiff was riding on that car and the president's car met it and the accident ensued. The president

testified that he knew there were nine cars out, and that he had passed eight, but that when the motorman on the eighth car that passed at the switch said there were no more cars out he directed the motorman on his car to go ahead, and that it was the business of the manager to know about the cars and to give information to the men running them, and that the manager was in fault in this case in not doing so. *Held,* that the court properly refused to instruct the jury that they must find for the company "if they believed that the collision was due solely to the president's misunderstanding of said motorman's remarks, and that such misunderstanding was purely accidental," for several reasons: first, the president's testimony itself deprived the company of the right to such an instruction; second, the president's car was not a regular car, and there is nothing in the record to show the manager or any motorman knew that it was on the track; and, third, the president had no right to rely upon what the motorman of the passing car said, for he knew there was another car still out, which would come in sometime that evening, and therefore it was negligence to run his car at a high rate of speed around a curve where his car could not be seen.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*McKeighan & Watts* and *Robert A. Holland, Jr.,* for appellant.

(1) The court erred in refusing to give the instruction stating in effect that if the collision was due to mere accident the verdict of the jury must be for the defendant. Feary v. Railroad, 162 Mo. 75. (2) The court erred in overruling defendant's motion to set aside the verdict, on the ground that it was excessive. Where a verdict is so excessive as to indicate bias, prejudice and passion, it is the duty of the appellate court to set it aside. Burdict v. Railroad, 123 Mo. 221; Nicholds v. Crystal Plate Glass Co., 126 Mo. 55; Sawyer v. Railroad, 74 Mo. 147; Haynes v. Town of Trenton, 108 Mo. 123; Gurley v. Railroad, 104 Mo. 211; Trigg v. Railroad, 74 Mo. 147.

*A. R. Taylor* for respondent.

An instruction based on the idea of accident is always of doubtful propriety in any case, and is never good unless the jury are told what is an accident in contemplation of law. An accident has been defined by an eminent jurist, as applied to a judicial investigation in uch a case, to be "something that occurs without the culpable fault of anyone." Here we find that the collision took place. No effort is made to show that the collision occurred through any condition that the high degree of care owing by the carrier to the passenger could not have prevented. No sign in the record that it was due to accident as thus defined. The collision and injury made a case only to be excused by the exercise of the highest practical care of human foresight, yet there is nothing to explain the collision except a blunder, either by President Turner or some motorman, in either case the defendant being liable.

MARSHALL, J.—This case is in all its essential features like the case of Malloy against this defendant just decided, and reported at page 75 of this volume. The plaintiff was a passenger on defendant's car, and was injured in the same collision that injured Malloy. The pleadings are identical, except as to parties and the extent of the injury. The proofs are the same except that in this case it appears, that before the accident the president's car was on a switch, and that when a car passed the motorman on the president's car asked the motorman on the passing car if his was the last car, and he said "yes." The said motorman on the passing car says he added "that there was one more car out there, but he did not know whether he (the said motorman) would meet it."

The president of 'the defendant testified that he knew there were eight cars running between Suburban Garden and Kinloch Park, and one running between

Kinloch Park and Florissant, and that after leaving Suburban Garden, and before the collision, his car passed eight cars; that he asked the motorman on the eighth car whether there were any more cars out and he said "no," and he then directed the motorman on his car to go ahead; that it was the business of the manager of the road to know about the cars and to give information to the men running the cars, and that the manager was at fault in this case in not doing so.

The plaintiff's injuries consisted of a complete inguinal hernia, that is, a rupture of the testicles, so that one of them "comes down sometimes once and a half as big as his fist." At the time of the trial there was pus in the scrotum, which indicates that the rupture is a very bad one, and that an operation would be very dangerous at the plaintiff's time of life. He has had to wear a truss ever since, and suffers a great deal of pain. There was a verdict for $3,900, and the defendant appealed. This court has jurisdiction because the constitutionality of the jury law is called in question.

## I.

What is said in Malloy vs. this defendant as to the deficiency of the petition and the correctness of the rulings of the court, and as to the measure and amount of the damages assessed, applies equally to this case. In this case, however, the defendant did not attempt to controvert the plaintiff's showing as to the nature or extent of the injuries. The injuries in this case do not appear to be as extensive or manifold as those in the Malloy case, and the verdict is only a little over half as much. The verdict is for the right party and the damages assessed are not excessive.

## II.

The refusal to give the following instruction asked by the defendant is assigned as error:

"The court instructs the jury that if they believe from the evidence that shortly before the car 'Kinloch' reached Ramona Park it was passed by a south-bound car of defendant, and that the motorman on said car 'Kinloch' asked the motorman on the said south-bound car whether said south-bound car was the last car out, and that the said motorman on said south-bound car said that there was one more car out; and if you further believe from the evidence that Mr. Turner, president of the defendant company, riding on the 'Kinloch,' understood said motorman on said south-bound car to say that his car was the last car out; and that Mr. Turner, relying on said advice, gave orders for the 'Kinloch' to proceed beyond Ramona Park; and if you further believe from the evidence that the collision in question was due solely to Mr. Turner's misunderstanding of said motorman's remark, and that such misunderstanding on Mr. Turner's part, under all the circumstances in the case, was purely accidental, and did not constitute negligence on his part, as defined in other instructions herein, then your verdict must be for the defendant."

This instruction was properly refused, for the following reasons: first, Mr. Turner, himself, testified that he knew there were nine cars on the road and that only eight had passed him; second, Mr. Turner testified that it was the duty of the manager of the road to regulate the running of the cars, and to notify the motormen of the cars that were on the road: third, the accident occurred on ladies' day at the races at Kinloch Park, when the cars were crowded and all the cars were needed to handle the crowds; fourth, the president's car was not a regular car on that part of the road, and there is nothing in the record to show that the manager or any motorman knew it was coming out on the road—it was running under the direction of the president himself; fifth, the president had no right to rely upon what the motorman of the passing car said

or what he understood him to say about there being no other car out on the road, for he knew that there was another car still out on the road, which would come in at some time that evening, and therefore it was negligence to run his private car at a high rate of speed around the curve where a coming car could not be seen, or to run it out over that part of the road without taking proper precautions to prevent a collision with a car he knew would come in at some time in the evening.

Finding no error in the record the judgment is affirmed. All concur.